Guy Gilbert Ribaudo, J.
At the outset, I wish to express the court’s displeasure in noting the increasing burden of the Small Claims Part, when used as a forum in matters involving serious questions of law and in which both sides are represented by counsel. The legislative intent of providing a “poor man’s” court, where small matters involving under $100 could be expeditiously adjudicated, without benefit of counsel, may be in danger <of being overburdened by contentious questions of law and verbose attorneys. However, in the instant cases, the court notes that time was of the essence with regard to the plaintiffs, whose 'stay in this country is limited to 29 days by the immigration authorities.
The instant cases involve the identical claims of two Greek seamen, and were tried together, without objection.
The testimony of one of the seamen elicited the following: In March, 1956, both had signed Liberian Articles and had become members of the crew of the S. S. Olympic Rainboio. This was in a port in Italy. The articles provided that at the end of 12 months as members of the crew they were to be repatriated to the same Italian port, at the expense of the ship operators, who in the instant appears to be Onassis, or one of his many maritime corporations.
At the end of 12 months the men did receive certain required vacation pay, but since the ship was now plying its trade between Bombay, India and the Persian Gulf, the captain requested that the men remain as members of the crew rather than insist on immediate repatriation.
After 16 months at sea, the vessel reached a California port on July 4, 1957 and the men could no longer be restrained from insisting on repatriation to their loved ones. A local Liberian consul is said to have intervened on behalf of the plaintiffs, and, in any event, the captain advised both men to start their home *789 ward journey and contact the ship operators’ agent in New York, to wit, The Central American Steamship Agency, Inc., and they would receive the expense funds required for such repatriation. At that the men left the ship in California and came eastward by bus.
Both seamen knew of the defendant as agent of the ship, as their mail had been routed through the defendants’ New York office. Once in this city they presented themselves at the defendant’s office, and at their request, received medical attention at the expense of the defendant and from physicians furnished by the defendant.
But their request for a return of expenses from California to New York was rejected by the defendant.
It is the contention of the defendant that its agency for the shipowner stops this side of such an expenditure. Both men sought the return of $100, which the testimony showed was less than their actual expenses.
The defendant’s sole witness was the assistant to the operating manager, who described the defendant as “general agents” for the owners or operators of the S. S. Olympic Rainbow. Under instructions from the operators of said vessel, the defendant would provision her and care for her crew, and this last included providing medical attention for the plaintiffs (which was not denied). At times, he admitted, the agency does pay for the repatriation of seamen. He contended (yet failed to establish) that the men had accepted a consent and waiver when they left the ship, albeit by custom.
Although the defendant contends it is not an agent for the purpose of paying for the repatriation of these crewmen, it had no knowledge of any other agency which would be more proper. For this and other ships owned by the same owners, the defendant has set up subagencies in many ports of the United States.
The defendant’s witness appeared quite evasive, but it was demonstrated that if the agency’s duties to the plaintiffs ended when the men came under this mythical “ consent and waiver ”, why did it furnish medical attention to both men after their arrival in this city?
"Where the defendant agency has the authority to provide medical care and otherwise provide for the crew, provisions and otherwise maintains the ship in question, whenever in a United States port, we fail to see why its agency should not be considered so general as to include the claims of the two plaintiffs.
I find that the defendant does have that power, involving the exercise of judgment and discretion as to make it a general agent.
*790 The burden of establishing the agency rested with the plaintiffs and their testimony alone would not be sufficient.
I reserved decision on the defendant’s motion, after the plaintiffs ’ case was in, to dismiss and now I deny it, as I believe the testimony of the defendant’s witness can only be interpreted as supplementary proof of the general agency.
I therefore find for the plaintiffs, separately, in the amount of $100 each. Ten days’ stay.